Daniel Patrick KING, Appellant,

v.

The STATE of Texas, Appellee.

No. 60467.

Court of Criminal Appeals of Texas, Panel No. 1.

April 15, 1981.

On Rehearing Feb. 23, 1983.

Gary J. Cohen, Austin, for appellant.

Ronald Earle, Dist. Atty. and William White, Asst. Dist. Atty., Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ONION, P.J., and ROBERTS and ODOM, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for theft. Punishment was assessed by the court at five years and appellant was granted probation.

Appellant waived his right to trial by jury, and the case was heard by the court on a plea of not guilty. Evidence was received by stipulation and an adverse ruling on appellant's motion to suppress was preserved for review. The fruits of the theft charged in this case, some thirty antique pistols, were seized from appellant's home in a search conducted pursuant to a search warrant. Several grounds of error challenge the validity of the search by way of an attack on the sufficiency of the affidavit upon which the search warrant was issued. We therefore set out the affidavit:

"THE STATE OF TEXAS

TRAVIS COUNTY:

"THE UNDERSIGNED AFFIANT, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:

"1. There is in Travis County, Texas, a suspected place and premises described and located as follows: A green frame residence with detached double garage located at 4406 Lockhart Hwy., Austin, Travis County, Texas together with all other sheds, outbuildings and vehicles located on said premises.

"2. There is at said suspected place and premises personal property concealed and kept in violation of the laws of Texas and described as follows: An antique clock approximately 18″ in height with a brown wooden case and an approximately 4″ square of frosted glass with beveled edges below the clock face, antique pistols and antique furniture.

"3. Said suspected place and premises are in charge of and controlled by each of the following persons: Daniel Patrick King, w/m—DOB 2–10–47 and wife Peggy.

"4. It is the belief of AFFIANT, and he hereby charges and accuses, that: the above mentioned property was acquired by theft.

"5. AFFIANT has probable cause for said belief by reason of the following facts: On the 25th day of May, 1977, affiant received the following information from a confidential source, hereinafter referred to throughout as "The Source", who has provided information in the past on more than three occasions which proved to be true and on at least two occasions resulted in criminal convictions for offenses based on evidence revealed as a result of the information provided on those previous occasions.

" 'The Source' stated to affiant that he has been inside the above-described house within the last 48 hours and saw the above-described antique clock; further 'The Source' provided a sketch of an antique marble top washstand on a dark brown wood base. Said sketch matches the description of a washstand reported stolen from Katherine Williams on or about March 9, 1977, Austin Police Department Case # R–01870. The clock was reported stolen to Officer Cutler, TCSO by means of a burglary from John W. Chase on or about March 3, 1977 by the said John W. Chase.

"WHEREFORE, AFFIANT asks for issuance of a warrant that will authorize him to search said suspected place and premises for said personal property and seize the same and to arrest each said described and accused person."

In his third ground of error appellant contends the affidavit fails to establish probable cause to believe the property was stolen. In his fourth ground of error he contends the affidavit fails to provide sufficient underlying circumstances to support a conclusion that the property was where the informant said it was, as required by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We sustain both grounds of error.

This conviction was for the theft of the antique pistols from one Ivan McElroy. Other property listed in the search warrant was allegedly stolen from other people. Paragraphs 2 and 4 of the affidavit assert that the antique pistols were at the alleged premises and were stolen property. Yet the narration of facts in paragraph 5, asserted to constitute probable cause for the beliefs stated in paragraphs 2 and 4, make no reference whatsoever to the antique pistols. In that paragraph there is no assertion that the informant saw any pistols in the prem-

ises to be searched, as required to meet the standard of *Aguilar,* supra. Also, there is no assertion of facts to support the conclusion that any such pistols were stolen property, such as would permit issuance of a warrant under Art. 18.02(1), V.A.C.C.P. In sum, aside from the bold conclusion in paragraph 2 that antique pistols were in the described premises, the affidavit contains no reference to the pistols whatsoever. Grounds of error three and four are sustained.

In his fourth ground of error appellant challenges the sufficiency of the evidence.[1] The State relied on the presumption arising from unexplained possession of recently stolen property. Seven months had passed between the theft and the seizure of the pistols from appellant's possession. Without expressing any opinion on what evidence the State may be able to muster in the event of a retrial, we find the seven month lapse shown in the facts of this case does not mandate a holding that the possession, as a matter of law, was not sufficiently "recent" to invoke the presumption. Under *Hardage v. State,* Tex.Cr.App., 552 S.W.2d 837, the possession of the thirty pistols stolen from one complaining witness is a sufficient circumstance to allow reliance on the presumption. The ground of error is overruled.

For the trial error discussed above, the judgment is reversed and the cause remanded.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

A panel of the Court held that, while the evidence was sufficient to sustain the conviction, some of it was the fruit of an illegal search and seizure. The State argues in its

---

1. We address the sufficiency of the evidence because if meritorious such error would require an acquittal rather than reversal. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). In assessing the sufficiency of the evidence we consider the state's case as presented, and not in light of the trial error found in the first part of this opinion. To do otherwise would in effect allow trial error to produce a jeopardy bar, contrary to the distinction drawn in *Burks* and *Greene,* supra.

motion for rehearing that a close examination of the evidence reveals that the evidence was not the fruit of an illegal search and seizure. However, the State's argument proves too much. Because the State's analysis of the evidence persuades us that the evidence is insufficient to support the conviction, we need not reconsider the search and seizure question.

Appellant was indicted for theft of thirty antique pistols. He moved to suppress evidence, but the motion was overruled. Upon pleading not guilty, appellant waived jury trial and went to trial before the court. The evidence consisted of two written stipulations [1] and the transcription of the court reporter's notes (plus an exhibit) from an examining trial.

■ To prove that appellant stole the thirty antique pistols, the State relied on the venerable rule that the accused's unexplained recent personal possession of stolen property, coupled with an assertion by the accused of a right to the property, may support his conviction for theft of that property. *Williams v. State,* 621 S.W.2d 613 (Tex.Cr.App.1981); *Grant v. State,* 566 S.W.2d 954 (Tex.Cr.App.1978). However, for the reasons set out below we are convinced that there was no proof that appellant was "taken with the mainour" [2] and no competent evidence that appellant ever possessed the pistols which were the subject of the allegations in the indictment.

The parties stipulated that if one Weldon Johnson were called to testify, he would testify as follows:

"(a) he knows personally the Danny P. King named in this cause;

(b) on Thanksgiving Day 1976 Weldon Johnson came into possession of thirty (30) antique pistols which were actually the property of the Ivan McElroy named in the indictment of this cause;

(c) the pistols were delivered by a person who said they had come from Danny P. King;

(d) Weldon Johnson had heard approximately two weeks before Thanksgiving Day that Danny P. King possessed some antique pistols;

(e) in a conversation with Danny P. King, Weldon Johnson was told by King that if anyone asked about the pistols that Johnson was to say that a person, other than the one who gave the pistols to Johnson, had given them to him;

(f) Weldon Johnson had never seen the pistols in Danny P. King's possession or in premises under his control."

As the State itself points out in its motion for rehearing, "There is nothing to indicate that Johnson ever returned them [the pistols] to appellant or that they were located at 4406 Lockhart Highway [appellant's residence] at the time the search warrant was executed on May 27, 1977, about six months later." Nothing in the record indicates that Johnson had personal knowledge that appellant possessed the pistols alleged in the indictment.

On May 27, 1977, officers obtained a warrant to search appellant's residence for, and to seize, a certain antique clock, "antique pistols," and an antique washstand. Officer John Mellon, who was described by the prosecuting attorney as "the custody and control officer," testified at the examining trial that he, along with twelve or thirteen other officers, went to appellant's residence on that date with the warrant. They seized not only the items specified in the search warrant but everything in the house except a stove, a refrigerator, and a bedstead and mattress. The property was put on big flatbed city trucks, a process that took all day. Everything that was removed from the premises (more than 500 items) was listed on the return of the warrant. The

1. Appellant made it very clear that he was not stipulating that the testimony would be true.

2. A thief caught with the stolen goods in his possession was said to be taken "with the mainour," i.e., with the goods *in manu,* in his hands. Black's Law Dictionary 1105 (Rev. 4th Ed. 1968).

State emphasizes in its motion for rehearing that *no antique pistols appear on the return.*

The parties stipulated that if Ivan McElroy were called to testify he would testify as follows:

"(a) he is the owner of thirty (30) antique pistols,

(b) he is a collector and would qualify as an expert as to value of the antique pistols,

(c) he stored the 30 antique pistols in a mini-storage shed located at 4632 South Lamar, which is in Travis County, Texas, on September 1, 1976,

(d) on November 3, 1976, he discovered that the pistols were missing from the above described storage facility,

(e) he had given no one permission to take the 30 antique pistols from that location,

(f) on May 27, 1977, the pistols were found pursuant to a search warrant which was executed on May 27, 1977, at 4406 Lockhart Highway, Travis County, Texas,

(g) the premises described in the search warrant were under the direct care, custody and control of Daniel P. King in that it was his place of residence,

(h) the value of the 30 pistols at the time of the theft in Travis County was $7,725.00."

As the State so aptly puts it, "Unless McElroy was present at the time the warrant was executed, one wonders how McElroy could have had personal knowledge that the pistols were *'found'* there."[3] By such cuts at the credibility of the stipulations, the State severed the only threads from which dangled its circumstantial evidence case. Only those stipulations arguably

**3.** Unless otherwise stated, all emphasis in this opinion is in the original.

**4.** Although this Court cannot consider such gratuitous statements which are unsupported by the record, the State favors us with the following:

could have served as proof of appellant's possession of the pistols alleged in the indictment, but the State now convinces us the stipulations are hearsay. A conviction cannot rest solely on hearsay. *Lumpkin v. State,* 524 S.W.2d 302 (Tex.Cr.App.1975).

Regarding the warrant, the State further instructs this Court as follows:

"Also, *note well* the indictment alleged that 'thirty (30) antique pistols' owned by Ivan McElroy were stolen. The affidavit for search warrant asked to seize, among other things, 'antique pistols.' *However, there is nothing to show that the 'antique pistols' the affiant had in mind were the same as the 'thirty (30) antique pistols' of McElroy alleged in the indictment.*"

Likewise, there is nothing to show that the pistols McElroy had in mind were the same as the ones alleged in the indictment.[4]

In a circumstantial evidence case, such as this one, the evidence must exclude every reasonable hypothesis other than the guilt of the accused, and on appeal this Court will not presume any acts against the accused not shown to have been committed by him. *Gutierrez v. State,* 628 S.W.2d 57 (Tex.Cr.App.1982) (Opinion on Appellant's Motion for Rehearing); *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr.App.1969). In determining whether incriminating circumstances are sufficient, each case must be tested by its own facts. *Flores v. State,* 551 S.W.2d 364 (Tex.Cr.App.1977).

The evidence introduced at appellant's trial was insufficient to prove appellant ever possessed antique pistols. Even if the stipulations had not been hearsay, they still would be insufficient to prove appellant possessed the same pistols alleged in the indictment. Compare *Hanna v. State,* 546 S.W.2d 318 (Tex.Cr.App.1977); *Ellard v. State,* 509 S.W.2d 622 (Tex.Cr.App.1974); *McKnight v. State,* 399 S.W.2d 552 (Tex.Cr. App.1966).

"Moreover, although this record does not clearly show it, this writer feels duty-bound to inform the Court that he has been informed that the antique pistols alleged in the indictment as the stolen property were not seized as the result of the execution of this search warrant."

Accordingly, the judgment is reversed and remanded with instructions to enter a judgment of acquittal.

It is so ordered.